John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART**
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for the Reorganized Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>STAR BUFFET, INC.,<br><br>Debtor.<br><br>In re:<br><br>SUMMIT FAMILY RESTAURANTS, INC.,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:11-bk-27518-GBN<br>Case No. 2:11-bk-27713-GBN<br><br>**Joint Administration Under**<br>**Case No. 2:11-bk-27518-GBN**<br><br>**SUPPLEMENTAL OBJECTION TO THE FIRST AND FINAL APPLICATION OF CORPORATE RECOVERY ASSOCIATES, BUSINESS AND FINANCIAL ADVISORS TO THE OFFICIAL JOINT COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES** |

Star Buffet, Inc. ("Star") and Summit Family Restaurants, Inc. ("Summit"), reorganized debtors in the above-captioned bankruptcy proceedings (collectively, the "Debtors"), through counsel undersigned, hereby submit this supplemental objection to the *First and Final Application of Corporate Recovery Associates, Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims, for Compensation and Reimbursement of Expenses* (the "CRA Fee Application"), as clarified by the *Reply in Support of the First and Final Application of Corporate Recovery Associates, Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims, for Compensation and Reimbursement of Expenses* (the

"CRA Reply"). Although, in the CRA Reply, Corporate Recovery Associates ("CRA") did provide additional information regarding certain of its billing entries, it has done little to explain how $113,570 in fees and expenses could have been incurred, within the limited scope of its authorized engagement, during the brief duration of CRA's involvement in these cases.

## I. FACTUAL BACKGROUND

1. On September 28, 2011, Star filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

2. On September 29, 2011, Summit filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

3. On November 1, 2011, the United States Trustee gave notice of the appointment of the Official Joint Committee of Unsecured Creditors (the "Committee").

4. As ultimately constituted, the Committee consisted of only four members.

5. On March 26, 2012, the Debtors filed their initial joint plan of reorganization (the "Initial Plan").

6. The Initial Plan provided for the Debtors' unsecured creditors to be paid in full, with interest.

7. The Initial Plan also granted unsecured creditors a blanket lien on substantially all of the Debtors' assets, subject only to existing encumbrances, to secure the payments to which they were entitled under the Initial Plan.

8. On May 24, 2012, the Debtors filed their first amended plan of reorganization and the attendant disclosure statement (the "Disclosure Statement").

9. This first amended plan also dictated the repayment in full, with interest, of all unsecured claims, and provided for a blanket lien to secure such repayment.

10. The Disclosure Statement was approved by the Court on May 25, 2012.

11. Prior to May of 2012, the Committee had not been overly active in the Debtors' bankruptcy, presumably satisfied with the full repayment to which unsecured creditors were entitled under the Debtors' proposed plan.

12. In late May of 2012, Mr. Feferman contacted various members of the Committee, apparently without prior solicitation.

13. Almost immediately subsequent to its communications with Mr. Feferman, and apparently in the new understanding that the Committee's professionals could be compensated from the Debtors' bankruptcy estates, the Committee drastically increased its participation in these proceedings.

14. On June 29, 2012 the Committee filed its *Application for Entry of an Order Authorizing the Retention of Corporate Recovery [Associates] as Business and Financial Advisors for the Official Joint Committee of Unsecured Creditors of Star Buffet, Inc. and Summit Family Restaurants, Inc.* (the "CRA Retention Application").

15. CRA is a financial advisory firm located in San Diego, California.

16. According to the declaration accompanying the CRA Retention Application, Richard Feferman is a principal of CRA.

17. According to the declaration accompanying the CRA Retention Application, Mr. Feferman agreed to bill the Committee, and seek to recover from the Debtors' estates, $525 per hour of billable time.

18. Edward M. Burr of Sierra Consulting ("Sierra"), the Debtor's Court-approved financial advisor, with more than 22 years of experience with financially distressed businesses, billed the Debtors, and sought to recover from the Debtors' estates, $345 per hour of billable time.

19. The CRA Retention Application offered no explanation as to why it was necessary for the Committee to utilize an out-of-state financial advisor, and to bear the attendant, and sizeable, increase in hourly rate.

20. On July 2, 2012, the Debtors filed a qualified objection to the CRA Retention Application, arguing that the use of an out-of-state financial advisor would result in undue expense derived from higher hourly rates and unnecessary travel.

21. On August 13, 2012, after a hearing at which the Court expressed some concern regarding the use of out-of-state professionals, the Debtors and the Committee filed their

*Stipulation as to the Terms of Employment of Corporate Recovery Associates by the Official Joint Committee of Unsecured Creditors* (the "CRA Stipulation")

22. The CRA Stipulation limited the permissible scope of CRA's engagement to, essentially, the analysis necessary to assess the feasibility of the Debtors' plan and the investigation of potentially avoidable transfers.

23. On August 14, 2012, the Court entered an order approving CRA's retention, in accordance with the terms of the CRA Stipulation.

24. On October 17, 2012, the Debtors filed their *Second Amended Joint Plan of Reorganization* (the "Plan").

25. On December 2, 2012, the Debtors and the Committee finalized a complete settlement of their disputes and filed a stipulation that modified the Plan in certain respects in exchange for the Committee's support.

26. On December 17, 2012, the Court entered an order confirming the Plan.

27. Mr. Feferman was never deposed in this matter.

28. Mr. Feferman never produced a written report in this matter.

29. Mr. Feferman never participated in any evidentiary hearing in this matter.

30. On February 14, 2013, CRA filed its *First and Final Application of Corporate Recovery Associates, Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims, for Compensation and Reimbursement of Expenses* (the "CRA Fee Application") and CRA's supporting invoices (collectively, the "CRA Invoice").

31. The CRA Fee Application sought approval and payment of $114,716.50 in fees and $1,011.31 in reimbursable expenses.

32. In total, CRA and the Committee's legal counsel have asked the Court to require the Debtors to pay approximately $245,000 in fees and expenses related to their relatively brief involvement in the Debtors' bankruptcy proceedings.

33. On March 7, 2013, the Debtors filed their *Objection to the First and Final Application of Corporate Recovery Associates, Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims, for Compensation and Reimbursement of*

*Expenses* (the "First Objection") arguing that the extent of the fees and costs sought to be recovered by CRA far exceeded what was reasonable and appropriate.

34. A hearing on the CRA Fee Application and the Debtors' First Objection was held July 9, 2013.

35. At that hearing, the Court directed the Debtors to review the additional information contained in the CRA Reply, and file a supplemental objection, if necessary, on or before July 23, 2013.

36. The Debtors have reviewed the CRA Reply, and still believe that the amount of compensation sought by CRA is very unreasonable.

37. The Debtors' Plan, and the repayment in full of all creditors provided for therein, is dependent upon the operating cash flow generated by the Debtors' subsidiaries.

38. Payment of the full amount of fees and costs sought to be approved in the CRA Fee Application could consume the Debtors' cash to such an extent that the Debtors ability to fully perform under the Plan may be jeopardized.

39. The Debtors, in observance of their fiduciary duty to preserve the assets of their estates, and in an effort to assure the distributions to creditors called for in the confirmed Plan are made, hereby maintain their objection to the CRA Fee Application.

## II. LEGAL ARGUMENT

Pursuant to 11 U.S.C. § 330(a)(1), upon application, the Court "may award to . . . a professional person employed under Section 327 or 1103 reasonable compensation for actual, necessary services rendered by the . . . professional person." In assessing a request for compensation under Section 330, the Court must consider, among other things, the time spent by the professional, the rates charged by the professional, and whether the services rendered were necessary, or even beneficial, to the administration of the bankruptcy estate. 11 U.S.C. § 330(a)(3).[1]

---

[1] The Debtors hereby incorporate by reference the objections, authority, and argument raised in their First Objection to the CRA Fee Application (Dkt. # 356).

**A. Notwithstanding the supplemental information contained in the CRA Reply, the CRA Fee Application fails to adequately describe various tasks for which compensation is sought**.

In order for parties in interest, and the Court, to appropriately consider a professional's fee application, the professional seeking compensation must have maintained and provided adequate records to allow for a meaningful review of the reasonableness of the fees sought and the necessity of the work performed. *In re Jensen-Farley Pictures, Inc*., 47 B.R. 557, 582 (Bankr.Utah 1985)("Professional persons who intend to seek compensation from debtors' estates should maintain meticulous contemporaneous time records and such records should reveal sufficient data to enable the Court to make an informed judgment about the specific tasks and hours allotted."); s*ee York Intern. Bldg., Inc. v. Chaney*, 527 F.2d 1061, 1069 (9th Cir. 1975). The CRA Fee Application does not provide adequate information in many instances. The insufficiency of the CRA's time records is demonstrated plainly in, but not limited to, the following time entries:

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 6/12/12 | Read email and response | $52.50 |
| 6/12/12 | Message left | $26.25 |
| 6/12/12 | Telephone call | $157.50 |
| 6/13/12 | Prepare for and participate in telephone call with counsel and committee member. | $577.50 |
| 6/13/12 | Draft and send email | $52.50 |
| 6/23/12 | Read and respond to emails from OCC chair. | $52.50 |
| 6/27/12 | Telephone with counsel and committee member. | $525 |
| 7/3/12 | Draft and send email to counsel | $105 |
| 7/6/12 | Telephone call with broker. | $52.50 |
| 7/16/12 | Read and respond to email from Mr. Burr. | $52.50 |
| 7/16/12 | Read and respond to email from counsel. | $52.50 |
| 7/20/12 | Read and respond to email from counsel. | $52.50 |
| 7/26/12 | Read and respond to email from counsel. | $52.50 |
| 8/22/12 | Read and respond to email from counsel. | $52.50 |

| | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1 | 10/2/12 | Draft and send two emails to Mr. Burr. | $105 |
| 2 | 10/2/12 | Read email from Cary. | $52.50 |
| 3 | 10/5/12 | Read email from Mr. Carroll and reply accordingly. | $52.50 |
| 4 | 10/15/12 | Draft and send email to debtors' FA. | $52.50 |
| 5 | 10/20/12 | Work on diligence. | $210 |
| 6 | 10/29/12 | Read and respond to email from counsel. | $52.50 |
| 7 | 10/29/12 | Read and respond to email from counsel. | $52.50 |
| 8 | 12/1/12 | Read email from Mr. Carroll. | $52.50 |
| 9 | **Total** | | **$1,968.75** |

These entries do not allow the Debtors or the Court to determine whether the services rendered were necessary or the amount of time spent was reasonable. These entries, which are only representative of the impermissibly vague descriptions used in myriad instances in the CRA Fee Application, cannot be approved.

**B. Several of the entries in the CRA Fee Application describe tasks that are purely administrative, or otherwise of no benefit to the administration of the Debtors' estates.**

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 6/8/12 | Read email from counsel re: emp docs. Amend bio – forward to counsel | $210 |
| 6/19/12 | Exchange emails with Mr. Carroll scheduling telephone call. | $52.50 |
| 6/24/12 | Email counsel to schedule telephone call in advance of meet and confer. | $52.50 |
| 7/3/12 | Read bylaws for OCC. | $315 |
| 10/10/12 | Examine financial info provided by debtors' in prep for conference call today with Mr. Burr and staff. (<u>duplicate entry</u>, see 10/8/12). | $210 |
| 10/10/12 | Wait for debtors' financial advisor to call for scheduling conference call. | $210 |
| 10/16/12 | Read and respond to email from Ms. Bouvea scheduling conference call. | $52.50 |
| **Total** | | **$1,102.50** |

**C. Several of the entries included in the CRA Fee Application appear to relate to services outside the scope of CRA's approved retention.**

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/23/12 | Examine factual information; draft and send email to counsel re: same (Debtors' compliance with tax code). | $210 |
| 11/2/12 | Random check on property tax compliance and report via email to counsel | $420 |
| 11/5/12 | Work on report of factual analysis of financial info (Report re how POC 15 (IRS) is spread over debtors and subs (?)) | $420 |
| **Total** | | **$1,050** |

**D. CRA's fees are unreasonably high due, in part, to the ranging, repetitive, and unnecessary discovery conducted by the Committee.**

Contrary to the assertions made by Mr. Feferman in open court and in the CRA Fee Application, the Debtors were anything but uncooperative in providing him the information necessary to conduct a feasibility analysis. The Debtors produced no less than 47,381 pages of information to the Committee and Mr. Feferman. Upon each production of documents made by the Debtors, Mr. Feferman would issue a new, expansive, and unnecessary request for further records. The ranging discovery requests made by the Committee, in one instance, even forced the Debtors to postpone a scheduled confirmation hearing. The history of the Committee's abusive and unnecessary discovery practices is clearly described in the Debtors' *Motion for Protective Order Regarding Discovery by the Official Committee of Unsecured Creditors* (the "Motion for Protective Order," Dkt. # 278), and the exhibits attached thereto. After an expedited hearing, at which the Debtors informed the Court of the excesses in the Committee's discovery demands, the Court precluded Mr. Feferman and the Committee from engaging in further abusive discovery by the entry of its *Order Granting Debtors' Motion for Protective Order and Establishing Pre-Trial Procedures for Plan Confirmation Hearing* (Dkt. # 293). As demonstrated in the Motion for Protective Order, and as presumably understood by the Court in granting that motion, the discovery demands of Mr. Feferman and the Committee were excessive and improper. These unjustified demands resulted in CRA's fees being unnecessarily high, and the time spent by CRA in preparing

1  these unjustified discovery demands, or reviewing the documents produced in response thereto,
2  should not be chargeable to the Debtors' bankruptcy estates.

**E.  Most importantly, Mr. Feferman's unreasonably high rate, and his refusal to use junior associates, resulted in the CRA Fee Application being unreasonably high in amount.**

Although the time entries and discovery practices described above are problematic, they are not the root of the problem.  The scope of CRA's engagement was limited, by the Court's order, to an analysis of the Debtor's financial situation, to assess the feasibility of the Debtors' Plan, and an investigation into the potential for avoidable transfers.  *See Order Authorizing the Retention of Corporate Recovery Associates as Business and Financial Advisors for the Official Joint Committee of Unsecured Creditors*, Dkt. # 242.  In the relatively short period of time between the retention of CRA and the final settlement between the Debtors and the Committee, presumably in fulfilling only the limited duties approved by the Court, CRA incurred $113,570 in fees and reimbursable expenses.  The primary causes of this unreasonable amount of compensation are Mr. Feferman's unjustifiably high hourly rate, and his refusal to delegate any tasks to junior associates.

According to the CRA Reply, Mr. Feferman expended a total of 229.1 hours rendering services to the Committee.  Of these, 4.2 hours, characterized as "Litigation Consulting," related to the "identification and examination of prospective avoidable transfers." (*See* CRA Reply, Exhibit B).  19.2 hours, identified with a category designation of either "FEA" or "OFEA," related to fee and employment applications, and objections thereto, and 15.1 of hours were attributable solely to travel.  *Id.*  This leaves 190.6 hours that, by virtue of the limitations imposed by the Court's defining the scope of CRA's retention, must have been devoted to the analysis necessary to assess the feasibility of the Debtors' Plan.  At Mr. Feferman's hourly rate of $525, this equates to $100,065 being charged to the Debtors' estates for a feasibility analysis, without any formal report being prepared, and without any testimony being given at deposition or trial.

One reason for the unreasonably high amount of the compensation sought by CRA is Mr. Feferman's inflated hourly rate of $525.  Although this may well be the appropriate rate for Mr. Feferman's services in the San Diego market, it is unjustifiably high when compared to comparable financial advisors in the Phoenix area.  By way of comparison, the Debtors' senior financial

advisor, Edward Burr, who has more than 22 years of experience working with financially distressed businesses, charged the Debtors' $345 per hour. Mr. Feferman has acknowledged that Mr. Burr is a capable financial advisor, and has offered no reason why he should be compensated at a rate of $180 more per hour. This sizeable hourly premium sought by CRA is unjustified and unreasonable, and should not be recoverable.

To compound the problem inherent in Mr. Feferman's elevated hourly rate, Mr. Feferman refused to use any junior associates or analysts with lower hourly rates. Although CRA "[employs] exceptional bankruptcy analysts at lower rates," (*see Declaration of Richard J. Feferman in Support of the Amended First and Final Fee Applications of Perkins Coie LLP and Corporate Recovery Associates*, Dkt. # 421), not a single task rendered in service of the Committee was performed by any of these analysts. Notwithstanding the substantial amount of time that was spent reviewing documents produced by the Debtor, which would typically be the responsibility of a junior associate, every entry in the CRA Fee Application refers to work done by Mr. Feferman personally, and charged to the Debtors' estates at the rate of $525 per hour. This unnecessary use of Mr. Feferman's expensive time improperly increased the total amount of fees sought in the CRA Fee Application. By comparison, of the total amount of time expended by the Debtors' financial advisors, less than 28% was attributable to the senior advisor, Mr. Burr. The remaining 72% was attributable to the work of one of Sierra's bankruptcy analysts, and billed at the reduced rate of $295 per hour. This common, and proper, allocation of work resulted in the Debtors being charged a blended hourly rate of less than $315 per hour, and created a substantial savings for the Debtors' estates.

If Mr. Feferman's hourly rate were reduced to that of Mr. Burr, and if Mr. Feferman had used the junior analysts at his disposal, to the same extent and at the same hourly rate as Mr. Burr, the total amount of the CRA Fee Application, including costs, would be approximately $72,000. This adjustment, coupled with the disapproval of the specific entries identified above and a reduction for time spent engaged in needless discovery, is what is necessary to bring the amount of the CRA Fee Application within the realm of reasonableness.

Case 2:11-bk-27518-GBN    Doc 426    Filed 07/23/13    Entered 07/23/13 15:56:12    Desc
Main Document    Page 10 of 12

## III. CONCLUSION

For the foregoing reasons, and as set forth in the Debtors' prior *Objection to the First and Final Application of Corporate Recovery Associates, Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims, for Compensation and Reimbursement of Expenses*, the Debtors submit that the total amount of fees and costs sought to be approved in the CRA Fee Application is unreasonable and must be reduced. Therefore, in observance of their fiduciary duties, the Debtors respectfully request that the Court substantially reduce the compensation to be awarded in connection with the CRA Fee Application.

DATED: July 23, 2013.

POLSINELLI SHUGHART

By: /s/ Wesley D. Ray
John J. Hebert
Philip R. Rudd
Wesley D. Ray
One E. Washington Street, Suite 1200
Phoenix, AZ 85004

*Attorneys for the Reorganized Debtors*

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on July 23, 2013, to:

| | |
|---|---|
| U.S. TRUSTEE'S OFFICE<br>230 N. 1st Avenue, Suite 204<br>Phoenix, AZ 85003 | Simon Property Group, Inc.<br>Ronald M. Tucker * rtucker@simon.com<br>225 West Washington Street<br>Indianapolis, IN 46204<br>*Attorneys for Simon Property Group, Inc.* |
| S. Cary Forrester * scf@forresterandworth.com<br>FORRESTER & WORTH, PLLC<br>3636 N Central Avenue, Suite 700<br>Phoenix, AZ 85012<br>*Attorneys for the Debtors* | Craig S. Ganz * craig.ganz@gknet.com<br>GALLAGHER & KENNEDY, PA<br>2575 E Camelback Rd, Suite 1100<br>Phoenix, AZ 85016<br>*Attorneys for Spirit Master Funding LLC* |
| Jeffrey C. Hampton * jhampton@saul.com<br>Melissa W. Rand * mrand@saul.com<br>SAUL EWING LLP<br>Centre Square West<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102<br>*Attorneys for U.S. Foodservice, Inc.* | Michele Sabo Assayag<br>Jaime K. Shean * efilings@amlegalgroup.com<br>Elizabeth H. Mattis<br>ASSAYAG MAUS<br>2915 Redhill Avenue, Suite 200<br>Costa Mesa, CA 92626<br>*Attorneys for Wells Fargo Bank, NA* |

| | | |
|---|---|---|
| 1 | Joseph Wm. Kruchek * joe.kruchek@kutakrock.com<br>Kelley E. Braden * kelley.braden@kutakrock.com<br>KUTAK ROCK LLP<br>8601 N. Scottsdale Road, Suite 300<br>Scottsdale, AZ 85253-2742<br>*Attorneys for Wells Fargo Bank, NA* | Tennessee Department of Revenue<br>c/o TN Attorney General's Office<br>Bankruptcy Division * gill.geldreich@ag.tn.gov<br>P.O. Box 20207<br>Nashville, TN 37202-0207<br>*Attorneys for Tennessee Dept of Revenue* |
| 2 | Thomas E. Littler * tlittler@gordonsilver.com<br>Robert C. Warnicke * rwarnicke@gordonsilver.com<br>GORDON SILVER<br>One E Washington Street, Suite 400<br>Phoenix, AZ 85004<br>*Attorneys for JB's Family Restaurant, Inc.* | Fred King * fbking10@comcast.net<br>FREDERICK B. KING, LLC<br>1200 N. 18th Street, Suite AA<br>Monroe, LA 71201<br>*Attorneys for K & A Brasher, LLC* |
| 3 | Thomas H. Allen * tallen@asbazlaw.com<br>Michael A. Jones * mjones@asbazlaw.com<br>ALLEN SALA & BAYNE, PLC<br>1850 N Central Avenue, Suite 1150<br>Phoenix, AZ 85004<br>*Attorneys for Tinsley Hospitality Group, LLC* | John G. Sinodis * jgs@jhc-law.com<br>Bryan W. Goodman * bwg@jhc-law.com<br>JENNINGS HAUG & CUNNINGHAM, LLP<br>2800 N Central Avenue, Suite 1800<br>Phoenix, AZ 85004-1049<br>*Attorneys for Oshunola, LLC and Nareke, LLC* |
| 4 | John M. Koneck * jkoneck@fredlaw.com<br>FREDRIKSON & BYRON, PA<br>200 South Sixth Street, Suite 4000<br>Minneapolis, MN 55402-1425<br>*Attorneys for AEI Fund Management, Inc.* | Steven C. Mahaffy * steve@mahaffylaw.com<br>MAHAFFY LAW FIRM, PC<br>P.O. Box 12959<br>Chandler, AZ 85248<br>*Attorneys for Michael D. Naumes and Susan F. Naumes* |
| 5 | Gregory J. Gnepper * ggnepper@gblaw.com<br>GAMMAGE & BURNHAM<br>Two North Central Avenue, 15th Floor<br>Phoenix, AZ 85004<br>*Attorneys for Greenway Leasing, LP* | Dean M. Dinner * ddinner@ngdlaw.com<br>NUSSBAUM GILLIS & DINNER, PC<br>14850 N. Scottsdale Blvd., Suite 450<br>Scottsdale, AZ 85254<br>*Attorneys for Platinum Bank* |
| 6 | Donald F. Ennis * dfennis@swlaw.com<br>Benjamin W. Reeves * breeves@swlaw.com<br>SNELL & WILMER, LLP<br>One Arizona Center<br>400 E. Van Buren<br>Phoenix, AZ 85004-2202<br>*Attorneys for Stockman Bank of Montana* | Andrew A. Harnisch *<br>harnischa@ballardspahr.com<br>Jaclyn D. Foutz * foutzj@ballardspahr.com<br>BALLARD SPAHR, LLP<br>1 E. Washington Street, Suite 300<br>Phoenix, AZ 85004-2555<br>*Attorneys for Mid South Partners* |
| 7 | Richard M. Lorenzen * RLorenzen@perkinscoie.com<br>PERKINS COIE LLP<br>2901 N. Central Avenue, Suite 2000<br>Phoenix, AZ 85012-2788<br><br>Schuyler G. Carroll * SCarroll@perkinscoie.com<br>PERKINS COIE LLP<br>30 Rockefeller Plaza, 25th Floor<br>New York, NY 10112<br>*Attorneys for the Official Joint Committee of Unsecured Creditors* | Richard J. Feferman *<br>richard@crarecovery.com<br>Corporate Recovery Associates<br>3830 Valley Centre Drive, Suite 705-152<br>San Diego, CA 92130<br>*Business and Financial Advisors to the Official Joint Committee of Creditors Holding Unsecured Claims* |

By:    */s/ Tasha M. Shultz*